CASE 106—PRACTICE, POSSESSION—MARCH 21, 1885.

# Henderson, &c., v. Dupree, &c.

APPEAL FROM BALLARD CIRCUIT COURT.

1. When the court, by agreement of parties, tries the law and facts in an ordinary action, and the party against whom the judgment is rendered fails for three days to move the court for a new trial, with grounds therefor, no error of the trial judge, on admitting or receiving evidence, can be considered upon his appeal to this court.

2. A party who purchases a tract of land and takes a bond for a conveyance from his vendor, can not claim or hold adversely to his vendor.

3. He may, by actual notice to his vendor, disclaim that he holds under him, and by notoriously holding against his vendor create an adverse claim, but not otherwise.

J. D. WILDS AND W. G. BULLITT FOR APPELLANTS.

1. Appellee entered under an executory contract, and thereby became a quasi tenant. As long as appellee remained in that condition he can not plead an adverse title to his vendor.

2. Although the possession has been held for more than twenty years, yet, if possession was taken under an executory contract, and the party going into possession looked to his vendor for title, his possession is not adverse.

3. It is clear that the judgment should be reversed. (6 J. J. Mar., 163; 5 Littell, 317; 4 Bush, 32; 1 J. J. Mar., 39; 1 Dana, 389; 18 B. Mon., 290; 4 B. Mon., 605; 6 Dana, 422; 1 B. Mon., 152; 6 Dana, 432; 6 Bush, 545; 11 Ib., 200.)

NICHOLS & HAWES FOR APPELLEES.

1. The vendee may openly and notoriously renounce the title of the vendor and claim to hold adversely to him; and if, after having done so, he is permitted to remain fifteen years in possession (the vendee being free from disability), he will be protected in his possession.

2. The motion for a new trial was not made within the time required and this court will only look to the pleadings in the case. (6 B. Mon., 369; 3 Mon., 48; 2 Ib., 27; 5 J. J. Mar., 571; 18 B. Mon., 233; 1 Duv., 387; 1 Bush, 472.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The primary object of this action was the division of a tract of land among its joint owners. By a.

judgment the appellants were charged, as a part of
their portion, with 191 acres, then in the possession
of Anna Dupree, and which, she claims, was sold by
them by one Taylor, as their agent, to one Wayne
by title bond, in 1849 ; and then by him to one Boyd,
and by him to one Todd, and by him to her. The
appellants then made her a defendant, by an amended
petition, in which they seek to recover the land from
her, and upon which a summons was issued against
her on November 23, 1882. Todd having conveyed
the land to her with general warranty of title, he was
allowed to appear and contest, by answer, the right
of the appellants to it. He did so upon two grounds :
First, adverse possession ; and second, champerty.
The last defense being based upon the fact that the
appellant, Malinda Henderson, had obtained convey-
ances to herself from her co-heirs of their interests
in the land, when (as is claimed) it was held ad-
versely.

In this way this equitable action was converted
into one of ejectment, but was never transferred to
the ordinary docket. By agreement, however, an
order was entered for its trial by jury, and a day
fixed therefor, and it not being then tried, another
day was then named by another order ; and finally it
was, by consent, submitted to the court and a jury
waived. The action was dismissed as to Anna Du-
pree, and without being asked to do so the court, in
its judgment, separated the facts found from the con-
clusions of law, and the appellants entered a gen-
eral exception to it. No grounds were filed or mo-
tion made for a new trial within three juridical

days after the rendition of the judgment. The issue was a purely legal one, and by the orders of the court was made one out of chancery, triable by a jury, unless the parties waived it; and the same rules must therefore govern as in case of the trial of an ordinary action by the court without the intervention of a jury.

We are aware that a review of the decisions of this court show some conflict as to the necessity of a motion for a new trial in such a case; and we are asked to overrule the case of Helm v. Coffee, 80 Ky., 176.

Ordinarily the facts are found by a jury, while the court decides the questions of law ; and only the latter are subject to exception. In such a case a party must except when the decisions are made, and must, within the proper time, enter a motion for a new trial, based upon written grounds, in which the attention of the court must be specifically called to the alleged error. We see no reason why this should not be required in cases where both the usual province of the jury and that of the court are committed to the latter, because the theory of appeals in such cases forbids one until the lower court has been afforded an opportunity to correct its error upon its being specifically pointed out; thus often avoiding the expense and trouble of an appeal, and enabling this court, when taken, the better to ascertain what error has been committed and excepted to below.

The rule as announced in Helm v. Coffee, *supra*, is now understood to be the rule of practice in this State; and it is of more importance that it should be uniform

and stable, than that it should be the best possible one; but we adhere to it as announced in that case because we regard it as the proper and safe one.

In this instance, the appellants having failed to move for a new trial within the time fixed by law, the numerous alleged errors as to the admission of testimony and otherwise can not be considered. There is not an utter absence of testimony to support the judgment, and the answer certainly presented a defense; and as there was no motion for a new trial, no other inquiry is involved.

Thus, even admitting that the second paragraph of the reply did not fully make an issue and contain in substance all that was stated in its first, third and fourth paragraphs (as in our opinion it did), yet for the reason above stated, it could not now avail the appellants.

In the absence of a motion for a new trial, this court will not consider the evidence in the case as it would if it had been made; but yet it is proper to determine whether there is any testimony whatever to support the verdict or judgment, because if none, then only a question of law was presented to the judge of the lower court; and a party ought not to be required to call his attention to the fact that the adverse party has no case or defense whatever. For this reason it has been held that it is unnecessary to assign as a ground for a new trial a peremptory instruction to the jury in order to raise the question upon an appeal. If a party presents no reason whatever in his pleadings or by testimony against the claim of his adversary, a rule requiring the attention of the lower

court to be called to it would be purely technical, without reason, and founded only upon the presumed utter incompetency of the judge. If, notwithstanding the evidence, it would have been proper in him to have instructed peremptorily against the party that has succeeded, or in effect have sustained a demurrer to the evidence, then only a question of law was presented, which, upon a consideration of the whole case, was decisive of the party's right, and ought to be considered by the appellate tribunal even in the absence of a motion for a new trial.

A purchaser by title bond or executory contract, although a *quasi* tenant, or even a tenant, may, by disclaiming the relation and by notoriously claiming to hold adversely to his contract or by actual notice to the landlord or vendor to that effect, hold adversely *in fact;* but admitting that so long as the parties looked to the appellants for the legal title, by reason of the title bond given to Wayne in 1849, and while the contract was executory, that their possession was amicable, yet, in 1860, Taylor, as the agent of the appellants, conveyed the land to Wayne by deed, and the latter to Boyd, and he to Todd, and he to Mrs. Dupree. The deeds were recorded in the proper office; they called for a marked boundary, and described the land by metes and bounds and courses and distances.

It is urged, however, that Taylor had no authority to sell the land in 1849, or to convey it in 1860, and none is shown; but yet the appellants, without seeming consistency, rely upon the fact that from 1849 to 1860 Mrs. Dupree, or those through whom she claims,

title, looked to the appellants for it, and that, there-
fore, possession was not adverse; and further say
that the deeds made in 1860, being void for want of
authority in Taylor as agent, could not create an ad-
verse holding or a possession beneficial to the appel-
lee. If the deeds were valid, then no question of
adverse possession would arise, because they would
have passed the title; and admitting that, up to the
time they were made, the party in possession was
their *quasi* tenant, and that his possession was not,
therefore, adverse; yet, one who so enters at the out-
set, may show a subsequent adverse possession in
himself, and if he was such under an executory con-
tract of purchase, then whenever a deed is made to
him his possession becomes adverse instead of ami-
cable, although the deed may be void and pass no
title, provided he *then ceases to look to the vendor for
title, and claims the land as his own.*

The question depends upon how he in fact claims
and holds; and if he regards the contract as *executed,*
and no longer looks to the vendor for title, but claims
in his own right, then his possession becomes adverse
as to all the world.

No question arises in this case under the thirty
years' limitation statute, contained in section 4, arti-
cle 1, chapter 71, of the General Statutes; but it can
not be presumed in this instance that, after the mak-
ing of the deeds in 1860, that the grantees in them
still regarded the alleged contract of purchase as
executory, and that they did not, from that time at
least, claim and hold adversely.

The testimony clearly shows otherwise. The land.

had been surveyed to Wayne; it was held by him from the outset under a marked boundary; and the purchasers improved it greatly by clearing and building houses upon it, and otherwise adding largely to its value. Their numerous acts, showing that they were holding adversely to every one, were open and notorious. From the time the deeds were made until a summons was issued against Anna Dupree, on November 23, 1883, nearly twenty-three years elapsed; and even if the entire period during which the late war existed be deducted, owing to the plaintiffs having then been residents of the Confederate States, and also a reasonable time within which the plaintiffs ought, under all the circumstances, to have learned of the adverse holding, yet there still remains over fifteen years during which the land was held adversely.

This fact renders it unnecessary to discuss the question of champerty, and it is sufficient to say, as to it, that all the parties claimed through the same title, and that a possession may toll the right of entry and be adverse under the limitation act, while it is not so under the law against champerty.

Judgment affirmed.